## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JORGE H. CORTES,
　　　　　*Plaintiff,*

vs.

Case No. 2:15-CV-09286-EFM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
　　　　*Defendant.*

### MEMORANDUM AND ORDER

Plaintiff Jorge H. Cortes seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits under Title II of the Social Security Act. Cortes alleges that his claim must be remanded for rehearing because the Administrative Law Judge ("ALJ") committed reversible error in making the step three, residual functional capacity ("RFC"), and step four determinations. Finding that the Commissioner's decision was supported by substantial evidence and substantially comported with proper legal procedure, the Court affirms.

### I.　　　Factual and Procedural Background

Cortes's relevant medical issues date back to January 14, 2005, when his chiropractor, Terry Shroyer took x-rays of his spine that revealed a subluxation of the L5, C1, and C6 vertebrae, a ten-millimeter apparent deficiency of the left leg, and loss of cervical curve with advanced phase two degenerative changes. In May 2009, Cortes returned to Shroyer for

additional x-rays.  These scans showed a subluxation of the L4 and C5 vertebrae, a thirteen-millimeter apparent deficiency of the left leg with compensatory scoliosis, increased scoliosis, and arthritic spurring of the L2 and C5 vertebrae.  Shroyer recommended Cortes undergo spinal adjustments when necessary.

Cortes's treatment with Shroyer was sporadic, with only fourteen documented visits between January 2005 and August 2012.  In December 2010, an examination revealed that Cortes had an unstable knee, which Shroyer noted was correctable with orthotics.  Cortes was also determined to be chronically obese.  Cortes declined treatment, citing financial concerns. Shroyer indicated that Cortes had not undergone any additional x-rays or scans, again citing financial concerns.  On June 2, 2011, Shroyer issued a medical statement that described Cortes's impairment as a progressive spinal condition that was causing advancing degenerative changes of the lumbar spine.  Shroyer indicated that the condition was permanent and non-reversible and prevented Cortes from working.

Meanwhile, in February 2010, Cortes began treatment with Dr. Richard E. Lochamy for high blood pressure.  Cortes saw Dr. Lochamy three times in 2010 for medication management. On March 8, 2011, Dr. Lochamy noted that Cortes had lost his job and could no longer afford his medications.  Cortes was again diagnosed as obese.

Shortly thereafter, Cortes began seeing nurse practitioner Linda Bott, ARNP.  In May 2011, Bott diagnosed Plaintiff with benign essential hypertension, diabetes mellitus, and hyperlipoproteinemia, type II-B.

During his visits with Bott, Cortes discussed his ongoing lower back and right shoulder pain.  Cortes noted that he was seeing a chiropractor and usually got relief after his adjustments. Bott's notes indicated that Cortes consistently had a normal range of motion in his upper and

-2-

lower extremities and no tenderness upon palpation of his spine.  While Bott usually noted Cortes's unemployed status, her notes from a June 2011 appointment indicated that Cortes had "been working some," which resulted in back pain not relieved by Cortes's usual course of ibuprofen.  In October 2011, Cortes told Bott that he was applying for disability benefits.

In January 2012, Cortes traveled to Colombia for three months.  While there, Cortes had an MRI of his lumbar and cervical spine. These scans revealed that Cortes suffered from bulging discs at the C4-C5 and C6-C7 vertebrae, mild cervical spondylosis, and intermuscular lipoma on his left side.  The scans also showed protrusion of the L1-L2 discs, as well as foraminal stenosis, predominantly on his left side.  Cortes was diagnosed with degenerative discopathy, lumbar spondylus osteoarthritis, and a Schmorl node.  In June 2012, Bott noted that Cortes was doing well with his high blood pressure and spine and joint issues.

Two nonexamining State agency consultants, Dr. Karen Sarpolis and Dr. C.A. Parsons, offered opinion evidence based on reviews of the record.  On June 1, 20111, Dr. Sarpolis completed a Physical Residual Functional Capacity Assessment.  She opined that Cortes could occasionally lift/carry 50 pounds, and frequently lift/carry 25 pounds.  She indicated that Cortes could stand, walk, and sit about six hours during a normal eight-hour workday with normal breaks.  Dr. Parsons confirmed Dr. Sarpolis's physical RFC on October 5, 2011.

Cortes filed for both Disability Insurance Benefits and Social Security Income on November 5, 2010, alleging disability beginning October 15, 2010.  His claims were denied initially on June 2, 2011, and upon reconsideration on October 7, 2011.  Cortes timely filed a request for an administrative hearing, which took place on July 3, 2012, before ALJ Timothy G. Stueve.  Cortes, represented by counsel, appeared and testified.

On July 23, 2012, ALJ Stueve issued his decision, finding that Plaintiff suffered from a variety of severe impairments, including hypertension, diabetes mellitus, and degenerative disc disease.  Despite these findings, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  ALJ Stueve concluded that Plaintiff retained the RFC to perform medium work, as defined under the Social Security Regulations, with the following limitations and/or exceptions: (1) only occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds; (2) stand, walk, and sit for a total of six hours during an eight-hour workday; (3) receive job instruction only by demonstration; and (4) requires no need to verbally communicate in English.

Given this unfavorable result, Cortes sought reconsideration of ALJ Stueve's decision from the Appeals Council.  The Council denied review on January 8, 2013.  As such, the ALJ's July 2012 decision became the final decision of the Commissioner.

On March 8, 2013, Cortes filed a Complaint in this Court seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration.  This Court reversed the Commissioner's decision and remanded the case for further administrative proceedings.

After two additional hearings, the ALJ again denied Cortes's claim finding that, because he could perform his past work as a painter, he was not disabled under the Act.  At step one, the ALJ found that Cortes had not engaged in substantial gainful activity during the period from his alleged onset date of October 15, 2010 through his date last insured of March 31, 2015.  The ALJ found at step two that Cortes has severe impairments of hypertension, diabetes mellitus, degenerative disc disease, and obesity.  But at step three the ALJ found that those impairments

did not meet or equal the severity of a listed impairment presumed severe enough to render one disabled.  Accordingly, the ALJ determined Cortes's RFC as follows:

> The claimant could lift up to 50 pounds occasionally and lift or carry up to 25 pounds frequently in medium work as defined in 20 CFR 404.1567(c) and SSR 83-10.  He could stand or walk for approximately six hours and sit for up to six hours during an eight-hour workday with normal breaks, and needed to receive instructions by demonstration only.

At step four, the ALJ found that Cortes was capable of performing past relevant work as a painter, and found at step five that the work did not require the performance of work-related activities precluded by his RFC.  The ALJ therefore concluded that Cortes had not been under a disability since October 15, 2010, the alleged onset date, through the date of his decision

Cortes did not file exceptions and the Appeals Council did not take jurisdiction.  On September 25, 2015, Cortes again filed a Complaint in the United States District Court, District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration.  Given Cortes's exhaustion of all administrative remedies, his claim is now ripe for review before this Court.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[1]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2]  "Substantial evidence is more

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Cowan v. Astrue*, 552 F.3d 1182, 1184–85 (10th Cir. 2008).

than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]   The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if he can "establish that [he] has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is expected to . . . last for a continuous period of at least twelve months."[5]  This impairment "must be severe enough that [he] is unable to perform [his] past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [his] age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether

---

[3] *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

the severity of those severe impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments."[10]

Upon assessing the claimant's residual functional capacity, the ALJ moves on to steps four and five, which require the ALJ to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[13]

### III.    Analysis

Cortes makes three primary arguments. First, he asserts that the ALJ erred in step three by not determining whether his chronic obstructive pulmonary disease ("COPD") met Listing 3.02A. Second, he argues that the ALJ's RFC determination was not supported by substantial evidence. Finally, he argues that the ALJ's step four determination was legally and factually flawed. The Court will address each argument in turn.

---

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

**A.  Step Three Evaluation—Chronic Pulmonary Insufficiency**

Cortes contends that the ALJ erred in his listing analysis with respect to his COPD.  First, he argues that the ALJ should have considered his COPD at step three even though the ALJ found the condition to be "non-severe" at step two.  The Commissioner does not contest this assertion, so the Court will assume, without deciding, that this is true.

Second, Cortes asserts that his condition meets the severity of Listing 3.02A (chronic pulmonary insufficiency).[14]  To meet Listing 3.02, a claimant must show that for his height, he had a forced expiratory volume ("FEV1") value below a certain threshold.[15]  For an individual with Cortes's height of 65 inches, an FEV1 value of 1.25 or lower meets Listing 3.02.[16]  Cortes notes that the results of his April 7, 2014 spirometry show he had a FEV1 of 1.45 pre-bronchodilator and .95 post-bronchodilator.  A second spirometry conducted on April 25, 2014 revealed a FEV1 value of .95 pre-bronchodilator and 1.04 post-bronchodilator.  These last two FEV1 values—.95 and 1.04—are listing level according to Cortes.

The Commissioner responds that in determining whether Cortes meets Listing 3.02, the ALJ considers the highest of any FEV1 values which he attained, citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00E.  The Commissioner then points to his highest FEV1 value from April 7, 2014, which was 1.45—too high to qualify for the listing.  Additionally, Cortes does not have a sufficient clinical record to qualify for the listing, and has not been able to show that he met the listing criteria for the requisite twelve months or more.[17]  The Commissioner draws

---

[14] *See* 20 C.F.R., pt. 404, subpt. P, app. 1 § 3.02(A).

[15] *See id.*

[16] *See id.*

[17] *See* Soc. Sec. Ruling 86-8, 1986 WL 68636, at *3 (Soc. Sec. Admin. 1986).

attention to the fact that Cortes has not experienced any of the most common symptoms attributable to these disorders, such as dyspnea on exertion, cough, wheezing, sputum production, hemoptysis, and chest pain.  In fact, Cortes did not even mention his respiratory limitations as a reason for being unable to work at the most recent hearing.

Cortes counters that the spirometry conducted on April 25, 2014 still "showed severe obstruction with no clear improvement post bronchodilator," and that the FEV1 obtained on April 25 "was .95 pre-bronchodilator and 1.04 post-bronchodilator which meets Listing 3.02A." Cortes thus contends that if the Court "were to accept Defendant's misinterpretation of Listing 3.00, one could have an FEV1 from 3 years prior, have worsening and disabling respiratory impairment, but never meet the Listing in spite of a subsequent Listing level FEV1."

The Court concludes that Cortes was unable to demonstrate, through medical evidence, that his COPD meets the medical criteria contained in Listing 3.02A.  At step three of the sequential evaluation process, the ALJ determines whether a claimant's impairments meet or equal one of the listings described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1).[18]  If the claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.[19]  The claimant has the burden of demonstrating, through medical evidence, that his impairments meet the medical criteria

---

[18] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[19] *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

contained in a particular listing.[20]  In addition, the claimant must show that the impairment has lasted, or is expected to last at least twelve months.[21]

Listing 3.02A specifically notes COPD as one of the impairments covered under the listing.[22]  Pursuant to Listing 3.02A, a claimant is entitled to a conclusive presumption that she is disabled if she can show that her disorder results in "chronic obstructive pulmonary disease, due to any cause, with the FEV1 [one-second forced expiratory volume] equal to or less than the values specified in table I corresponding to the person's height without shoes."[23]  An analysis under Listing 3.02A is only triggered by a determination at step two of the sequential evaluation that the medical evidence supports a finding that Plaintiff suffers from COPD or a medically equivalent condition.[24]

In this case, the ALJ determined that Cortes suffered from the severe impairments of "hypertension, diabetes mellitus, degenerative disc disease, and obesity."  Nonetheless, Cortes argues that the ALJ should have addressed Listing 3.02A at step three of the sequential evaluation based on the results of his second spirometry conducted on April 25, 2014.  The Court disagrees.

---

[20] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[Claimant has] step three burden to present evidence establishing her impairments meet or equal listed impairments.").

[21] 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

[22] 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.02(A).

[23] *Id.*

[24] *See id.*

An ALJ is required to consider both impairments a claimant alleges, and those for which the ALJ receives evidence.[25]  Cortes did not specifically allege COPD at his most recent hearing in June 2015 (more than twelve months after his spirometry test results).  At the hearing, he claimed that his diabetes, low back pain, and arthritis on his right side shoulder were the ailments making it difficult for him to work.  When the ALJ asked his attorney if there was anything else related to whether Cortes was disabled that the attorney was aware of, counsel replied "Nothing else, Judge."

Additionally, the medical evidence presented was insufficient to support a finding that Cortes suffered from COPD.  The introductory note to the Respiratory Impairments Listing provides:

> Because th[e] symptoms [attributable to these disorders] are common to many other diseases, a thorough medical history, physical examination, and chest x-ray or other appropriate imaging techniques are required to establish pulmonary disease.  Pulmonary function testing is required to assess the severity of the respiratory impairment once a disease process is established by appropriate clinical and laboratory findings.
> 
>           . . .
> 
> Respiratory impairments usually can be evaluated under these listings on the basis of a complete medical history, physical examination, a chest x-ray or other appropriate imaging techniques, and spirometric pulmonary function tests.[26]

In this case, despite the results of Cortes's second spirometry, the medical evidence did not support the impairment Cortes now asserts.  He has never had a physical examination, chest-x-ray, or any other appropriate imaging techniques performed necessary to establish a pulmonary disease.  As the ALJ noted at step two of the sequential evaluation, "[t]he claimant's COPD is sufficiently controlled with medication that it has not resulted in any chronic respiratory

---

[25] 20 C.F.R. § 404.1512(a).

[26] 20 C.F.R. pt. 404, subpt. P, app. 1 § 3.00.

abnormalities appreciable upon examination, such as diminished breath sounds, wheezing, rhonchi, or rales."  In addition, Cortes has never sought treatment for, or been diagnosed with COPD.

Therefore, contrary to Cortes's assertions, the medical record does not establish that Cortes was afflicted with COPD.  Accordingly, the Court concludes that the ALJ did not err in failing to evaluate Cortes's impairments under Listing 3.02A at step three of the sequential evaluation.

**B.  Residual Functional Capacity Assessment**

Next, Cortes challenges the ALJ's RFC assessment by asserting the ALJ erred by failing to properly weigh the medical opinions of record and by failing to include all of Cortes's alleged limitations in the RFC.  "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[27]  A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."[28]  The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record.[29]  The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[30]  However, there

---

[27] *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001).

[28] Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. July 2, 1996).

[29] *Id.*

[30] *Id.*

is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[31]

If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the medical opinion was not adopted.[32]   But there is no requirement that the RFC findings directly correspond to a specific medical opinion in the record.[33]   And the RFC assessment need not discuss every single piece of evidence.[34]   Although the record must demonstrate that the ALJ considered all of the evidence, he is only required to discuss the evidence supporting his decision, uncontroverted evidence he chooses not to rely on, and significantly probative evidence he rejects.[35]

### 1.  Dr. Shroyer's Opinion

First, Cortes takes issue with the ALJ's decision to afford Dr. Shroyer's opinion "minimal" weight.  More specifically, Cortes contends that the ALJ (1) "erroneously rejected" Dr. Shroyer's opinion "for the reason it was not from an acceptable medical source," (2) failed to evaluate Dr. Shroyer's opinion pursuant to the regulatory factors for evaluating medical opinions, and (3) did not assess Dr. Shroyer's opinions properly under SSR 06-3p or give good reasons for rejecting his opinions.

Social Security Ruling 06-3p provides that the agency "may use evidence from 'other sources' . . . to show the severity of the individual's impairment(s) and how it affects the

---

[31] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[32] Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. July 2, 1996).

[33] *Chapo*, 682 F.3d at 1288.

[34] *Henderson v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)).

[35] *Id.*

individual's ability to function."[36]   For opinions from non-medical sources, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion."[37]   "An opinion from a 'non-medical source' who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source."[38]   "For example, this could occur if the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole."[39]

To begin, Cortes's argument that the ALJ "erroneously rejected" Dr. Shroyer's opinion "for the reason it was not from an acceptable medical source" is without merit.  While true that the ALJ did note that Dr. Shroyer is not an acceptable medical source, he did not reject his opinion outright.  The ALJ still afforded Dr. Shroyer's opinion "minimal" weight.  Moreover, the ALJ discussed Dr. Shroyer's statements and gave specific reasons for why those statements were of limited probative value.   It is clear to the Court that the ALJ did not simply reject Dr. Shroyer's opinion for the sole reason that it was not from an acceptable medical source.

---

[36] Soc. Sec. Ruling 06-3p, 2006 WL 2329939, at *2 (Soc. Sec. Admin. Aug. 9, 2006).

[37] *Id.* at *5.

[38] *Id.* at *6.

[39] *Id.*

The Court also disagrees with Cortes's assertion that the ALJ "did not consider any of the factors" required by Social Security Ruling 06-3p.  While the ALJ did not explicitly analyze each factor sequentially, he did sufficiently address the suggested factors.  The Court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' "[40]  "After considering the factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns each opinion."[41]  If the ALJ rejects a treating source opinion completely, he must give specific, legitimate reasons for doing so.[42]

While it would have been helpful for the ALJ to have gone into greater detail in explaining and supporting the weight assigned to Dr. Shroyer's opinion, the decision is sufficiently specific to make clear the weight accorded to Dr. Shroyer's opinion and the reasons for that weight as required by the Tenth Circuit in *Oldham v. Astrue*[43] and *Watkins v. Barnhart*.[44] More is not required.

Cortes's argument that the ALJ failed to apply SSR 06-3p because he did not evaluate Dr. Shroyer's opinion pursuant to the regulatory factors for evaluating medical opinions is also without merit.  As Cortes argues, Social Security Ruling 06-3p requires that an ALJ, when considering the opinions of "other" medical sources such as chiropractors, weigh those opinions

---

[40] *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

[41] *Ward v. Colvin*, 2014 WL 2815696, at *3 (D. Kan. June 23, 2014).

[42] *Watkins*, 350 F.3d at 1301.

[43] 509 F.3d 1254 (10th Cir. 2007).

[44] 350 F.3d 1297 (10th Cir. 2003).

in accordance with the regulatory factors used for weighing medical opinions of acceptable medical sources and generally explain the weight accorded those opinions. That is exactly what the ALJ did here.

In reaching his decision, the ALJ specifically stated that he "considered opinion evidence in accordance with the requirements of . . . SSRs 96-2p, 96-5p, 96-6p and *06-3p*." That is confirmed by the fact that the ALJ compared and contrasted opinion evidence, and weighed the opinions based upon the thoroughness of each statement, the record evidence, and the rationale provided by the practitioner. Moreover, the ALJ weighed each practitioner's opinion separately, without making any distinction between the standard applied to each of the opinions.

Additionally, the ALJ's decision was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[45] First, the ALJ discussed Dr. Shroyer's December 2010 statement, finding that it made no assessment regarding Cortes's ability to perform work activities. Rather, the statement merely reviewed Cortes's treatment history.

Next, the ALJ then considered Dr. Shroyer's June 2011 statement, finding Dr. Shroyer's opinion that Cortes's impairments result in an "inability to work" is not a medical opinion. Instead, the ALJ noted that such an opinion "is an administrative finding dispositive of a case," reserved to the Commissioner of Social Security. Citing SSR 96-5p, the ALJ wrote that statements regarding issues reserved to the Commissioner are not entitled to any special significance, even if made by a treating source. The ALJ added that the statement was of limited probative value because it failed to assess the claimant's ability to perform basic work activities

---

[45] *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).

on a regular and continuing basis.  Furthermore, the ALJ stated that "a finding that the claimant is totally unable to work is inconsistent with the weight of the evidence, including the typically benign findings of physical examinations and the fact that the claimant has continued to work on at least a part-time basis since the alleged onset date of disability."  Accordingly, the ALJ's decision made clear the weight he gave to Dr. Shroyer's medical opinion and the reasons for that weight.

The Court's analysis does not end here, however, as Cortes also makes two arguments as to why the ALJ did not assess Dr. Shroyer's opinions properly under SSR 06-3p.  First, Cortes contests the ALJ's finding that Dr. Shroyer's June 2011 opinion was limited to an issue reserved to the Commissioner.  Were this true, Cortes argues, "this triggered the ALJ's duty to re-contact Dr. Shroyer."  In support, Cortes cites SSR 96-5p, which states: "[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."

However, as the Commissioner correctly argues, the duty to recontact does not automatically arise when the ALJ notes a treating physician's opinion pertained to an issue reserved to the Commissioner.  As the Tenth Circuit has explained, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the

inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty.[46]

Here, the ALJ believed the information he received from Dr. Shroyer was "adequate" for consideration; that is, it was not so incomplete that it could not be considered.  However, the ALJ also believed that the Dr. Shroyer's conclusion was wrong—it was insufficiently supported by the record as a whole.  The ALJ concluded that Dr. Shroyer's finding that Cortes was totally unable to work was inconsistent with previous physical examinations and the fact that Cortes has continued to work on at least a part-time basis since the alleged onset date of disability.  Accordingly, the ALJ did not have a duty to recontact Dr. Shroyer.

Second, Cortes argues that the ALJ erred when he found that Dr. Shroyer's opinion (that Cortes was totally unable to work) was inconsistent with the record as a whole.  Cortes points to examinations which showed he had "right shoulder tenderness, and generalized back tenderness," disc protrusions, degenerative disc disease, lumbar spondylosis, osteoarthritis, Schmorl's node, "bilateral shoulder pain with crepitus upon movement," "effusion in the knee, effusion in the popliteal fossa, tenderness on palpation of the posterior aspect, and swelling in the popliteal fossa."  Regarding the fact that Cortes has continued to work part-time, Cortes asserts that his attempts to work have not risen to a substantial gainful activity level.  Thus, Cortes contends, the ALJ did not assess Dr. Shroyer's opinions properly and did not give good reasons for rejecting his opinions.

---

[46] *White*, 287 F.3d at 908 (citing 20 C.F.R. § 416.912(e)); *see also Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("[T]he ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled.").

The Court rejects these arguments.  Dr. Shroyer's opinion that Cortes was totally unable to work is inconsistent with the record as a whole.  Despite his complaints of shoulder and low back pain, Cortes had at least two benign musculoskeletal examinations before and after Dr. Shroyer's opinion from June 2011.  MRI results from February 2012 showed normal alignment, disc height, and signal in Cortes's neck; despite bulging discs at C4-5 and C6-7, the diagnosis was *mild* cervical spondylosis.  As the ALJ noted, "[d]espite these abnormalities, the claimant has not presented with any persistent motor, sensory, reflex, or strength deficits upon physical examination."  While the conditions Cortes has been diagnosed with may be degenerative, they do not currently rise to a disabling level.  Moreover, the record also shows that Cortes has been able to work contrary to Dr. Shroyer's opinion.  In August 2011, two months after Dr. Shroyer opined that Cortes was unable to work, Cortes reported that he was "working full time now" as a painter and was "very busy with work."  Thus, the ALJ properly assessed Dr. Shroyer's opinions under SSR 06-3p and gave good reasons for rejecting Dr. Shroyer's opinions.

Accordingly, the Court concludes that the ALJ did not err when he afforded Dr. Shroyer's opinion "minimal" weight.

## 2.  The State Agency Physician's Opinions

Next, Cortes takes issue with the ALJ's decision to afford "significant" weight to the opinions of non-examining State agency consultants Dr. Sarpolis and Dr. Parsons.  He argues that the opinions of non-examining agency physicians are entitled to the least weight of all in assessing disability.  Thus, according to Cortes, the non-examining State agency physicians' opinions should not have been given any weight in the face of an examining source who has treated Cortes over a long period of time (apparently referring to Dr. Shroyer).

A "non-examining physician's opinion is an acceptable medical source," which an ALJ is entitled to consider.[47]  However, "[w]hen an ALJ considers medical opinions, the opinion of a non-examining physician is generally entitled to the least weight of all and the opinion of a treating physician is generally entitled to the most weight."[48]  The "opinions of physicians . . . who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, then are required of treating sources."[49]  However, SSR 96-6p provides that,

> [i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.  For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating [source's] medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.[50]

The ALJ did not err by assigning "significant" weight to the opinions of non-examining State agency physicians because the physicians were the only medical sources to opine directly on Cortes's RFC and their opinions were consistent with the objective medical evidence on the record.[51]  This was an "appropriate circumstance" as contemplated by SSR 96-6p for the ALJ to

---

[47] *Flaherty*, 515 F.3d at 1071.

[48] *Daniell v. Astrue*, 348 F. App'x 798, 799 (10th Cir. 2010).

[49] Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

[50] *Id.* at *3.

[51] *See Hanback v. Comm'r, Soc. Sec. Admin.*, 581 F. App'x 840, 841 (11th Cir. 2014) ("The ALJ did not err by assigning 'some weight' to the opinion of a non-examining physician because the non-examining physician was the only medical source to opine directly on [claimant's] physical [RFC] and that physician's opinion was consistent with the objective medical evidence of [claimant's] treating and examining physicians.").

grant greater weight to the opinions of non-examining physicians.  Dr. Shroyer, whose opinion

Cortes believes should be entitled to greater weight, is not an "acceptable medical source."[52]  Not

only is Dr. Shroyer not an acceptable medical source, but his opinion that Cortes's impairments

result in an "inability to work" has already been rejected as inconsistent with the record as a

whole.  The ALJ was thus faced with two unappealing alternatives: afford greater weight to the

opinion of (1) a treating/examining source who does not qualify as an "acceptable medical

source," or (2) two non-examining sources who do qualify as "acceptable medical sources."  The

ALJ did not err by choosing the latter.

In granting "significant" weight to the opinions of the non-examining physicians, the ALJ

properly based his decision on "medical evidence, qualifications, and explanations for the

opinions" as required by SSR 96-6p.  The ALJ was very detailed in explaining his decision.  He

wrote:

> I give significant weight to the opinions of nonexamining State agency
> consultants Karen Sarpolis, M.D. and C.A. Parsons, M.D.  As State agency
> consultants, the foregoing sources are familiar with the disability determination
> process and the Regulations, including the terms of art and legal and medical
> standards set forth therein.  Additionally, they each have specialized training and
> expertise that make them eminently qualified to render their respective opinions
> regarding the claimant's mental and physical ailments.  Most significantly, they
> based their opinions upon comprehensive reviews of the record, including the
> claimant's longitudinal medical history and self-reported daily activities.  Their
> opinions are consistent with the same.  Indeed, their opinions are accompanied by
> detailed narratives that explain what evidence the consultants relied upon when
> rendering their conclusions.  Although some evidence has been added to the
> record since the State agency consultants' reviews thereof, that evidence is
> cumulative of what was already present in the case record.  That is, the additional
> evidence does not document an appreciable worsening in the claimant's condition
> since the State agency consultants' opinions were rendered.  Based upon the
> totality of the foregoing, I give significant weight to the nonexamining State
> agency medical consultants' opinions.

---

[52] *See* 20 C.F.R. § 404.1513(a).

The Court concludes that the ALJ's reasoning was justified.  In this case, the physicians were the only "acceptable medical sources" to opine directly on Cortes's ability to perform basic work activities.  Dr. Shroyer, the treating source, offered two opinions.  His first opinion merely provided an overview of Cortes's treatment history, and his second opinion was that Cortes was unable to work—an assertion contradicted by the record.  Furthermore, the physicians' opinions were based upon the entire record, as opposed to Dr. Shroyer's opinion which appears to have been based only upon his interactions with Cortes.  Even when considering the stricter standard set forth in SSR 96-6p, the ALJ properly granted greater weight to the non-examining physicians' opinions.

Accordingly, the ALJ properly weighed all of the medical opinions of record.

### 3.  RFC Assessment—Functional Limitations

Finally, Cortes argues that the ALJ erred by failing to include all of Cortes's functional limitations in the RFC assessment.  Cortes points specifically to his obesity, degenerative disc disease, shoulder impairment, and knee impairment.

"The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."[53]  Although an ALJ is not required to include a claimant's diagnoses in the RFC, the functional limitations resulting from a claimant's diagnosed impairments must be included.[54]

---

[53] *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015).

[54] *Kelley v. Colvin*, 2014 WL 3611673, at *3 (D. Kan. July 22, 2014); Soc. Sec. Ruling 96-8p, 1996 WL 374814, at *5 (Soc. Sec. Admin. July 2, 1996).

Regarding obesity, Cortes contends that his obesity, in combination with his other impairments, must be considered when evaluating disability.  He also brings to the Court's attention the fact that the ALJ acknowledged Cortes to have "severe" obesity in this most recent decision, although it was not classified as "severe" in the first decision.  While the ALJ found an additional "severe" impairment, the ALJ did not include any additional functional limitations in the RFC.  In response, the Commissioner argues that the ALJ considered Cortes's obesity, but aptly noted that it did not cause any functional limitations.  The Court agrees.

In his decision, the ALJ explicitly stated that he "considered the combined effects of the claimant's obesity with the claimant's other impairments when reaching" his findings.  Continuing, the ALJ wrote, "even considering the exacerbating nature of the claimant's obesity, the cumulative medical evidence simply does not reasonably support a finding that the claimant is incapable of performing the full range of work at the medium exertional level."  Despite Cortes's contention, the ALJ clearly considered the combined effects of Cortes's obesity with his other impairments.  Additionally, the Court rejects Cortes's contention that a new finding of a severe impairment necessitates additional functional limitations.

Cortes has not identified any functional limitations not already included in the RFC that he believes should be imposed due to his obesity.  The ALJ determined that Cortes's obesity and its combined effect on his other impairments limited him to the full range of work at the medium exertional level.  The ALJ's stated limitations sufficiently account for his obesity.[55]

---

[55] *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (finding no error where claimant did not allege—and the medical evidence did not suggest—functional limitations flowing from the impairment other than those already acknowledged by the ALJ).

Next, Cortes argues that the ALJ failed to address the evidence and opinion from APRN Chandler that Cortes was restricted from squatting, kneeling, and bending of the back.  He concedes that the ALJ addressed the opinion from APRN Chandler that Cortes was being treated for diabetes, hypertension, and some pain issues related to his back.  However, Cortes believes the ALJ should have addressed the specific limitations opined by APRN Chandler.  The Commissioner argues that APRN Chandler's limitations on bending, squatting, and kneeling were temporary, until Cortes's symptoms abated.

The Court rejects Cortes's argument, as the ALJ properly addressed APRN Chandler's report.  While the ALJ did not explicitly mention each of the suggested limitations, the ALJ clearly alluded to them.  The ALJ wrote: "Ms. Chandler's opinion is speculative, stating the claimant's ability to do physical labor 'may' be affected by his impairments; [Ms. Chandler] provides no definitive statement regarding whether the claimant's ability to perform physical labor is affected or to what extent it is affected."  The ALJ went on to note that APRN Chandler's treatment notes did not document a persistent motor, sensory, reflex, or strength deficit reasonably consistent with a finding that Cortes is unable to perform the demands of medium work.  Thus, the ALJ sufficiently addressed APRN Chandler's limitations, finding that they were temporary in nature.[56]

Cortes then claims that the ALJ erred by rejecting Ms. Montes's third party statement without good reason.  The Court disagrees.  In the Tenth Circuit, an ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects

---

[56] See 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement.").

that the ALJ considered that testimony.[57]  Here, not only did the ALJ consider the testimony, but he made specific written findings regarding the testimony as well.  The ALJ determined that Ms. Montes's opinion "is internally inconsistent in that she indicates difficulties performing the job, yet indicates he would be rehired and that his employment ended because the amount of work available lessened—not because of any job performance deficiencies.  It is also inconsistent with the claimant's continued work running a painting business."  Therefore, the ALJ sufficiently justified his decision to reject Ms. Montes's opinions.

Accordingly, the ALJ's decision regarding Cortes's RFC was supported by the substantial evidence of the record as a whole.

### C.  Step Four Determination

Finally, Cortes argues that the ALJ's step four determination was legally and factually flawed.  He makes two primary arguments.  First, he claims that the ALJ's step four determination was based on erroneous testimony of the vocational expert ("VE") which clearly conflicts with the *Dictionary of Occupational Titles* ("DOT") and the VE did not offer an explanation as to the variance from the DOT.  Second, he argues that the ALJ failed to make specific findings regarding the physical and mental demands of his past relevant work.

Step four of the sequential analysis is comprised of three phases.  The ALJ is required by SSR 82-62 to make findings of fact regarding (1) the claimant's RFC, (2) the physical and mental demands of prior jobs or occupations, and (3) the ability of the claimant to return to the past occupation given his or her RFC.[58]  The ALJ can comply with these requirements if he

---

[57] *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996); *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006).

[58] *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.[59]

Turning to Cortes's first contention, Cortes suggests that the ALJ failed to recognize a conflict between the VE's testimony and the DOT and should have offered an explanation as to the variance from the DOT.  He notes that the ALJ's finding that Cortes could perform work where instructions were provided by demonstration only is inconsistent with the ALJ's conclusion that Cortes was capable of performing past relevant work as a painter.  He points out that the job of painter, a specific vocational preparation ("SVP") seven job, requires the ability to be capable of "understanding to carry out instructions furnished in written, oral, or diagrammatic form."  As he puts it, an "individual limited to demonstration cannot perform a job which requires written, oral, or diagrammatic instructions."  According to Cortes, the ALJ "did not recognize this conflict . . . or explain how he resolved the conflict in the decision."

This argument is also without merit, as the VE testified that a person who could learn only by demonstration could work as a painter.  First, the VE acknowledged that Cortes's past work was as a painter, a SVP seven job.  The VE then squarely addressed the perceived conflict with Cortes's limitations and the requirements of being a painter.  During his examination of the VE, the ALJ asked:

> For our first hypothetical assume an individual who's able to perform a range of medium work lifting up to 50 pounds occasionally, lifting or carrying 25 pounds frequently, standing or walking for six hours and sitting for approximately six hours per eight hour work day.  But the instructions need to be provided by demonstration only, and no requirement of [the] worker to verbally communicate in English.  Could such a person perform any of the claimant's past work?

---

[59] *Doyal v. Barnhart*, 331 F.3d 758, 760–61 (10th Cir. 2003).

The VE answered in the affirmative, noting that Cortes could work as a painter as the job is customarily performed.  Later, the ALJ specifically asked if there was "any requirement in the DOT for a painter to be able to speak," or "to interact with others?"  The VE answered "no."

Moreover, at step four, it was Cortes's burden to establish his disability.[60]  If Cortes was truly concerned about any conflict in the VE's testimony, counsel should have addressed that issue while he was examining the VE.  Yet counsel made no effort to clarify the VE's testimony regarding the perceived conflict with the DOT.  The ALJ apparently found that there was no reason to believe Cortes—after working as a painter for more than two decades—could no longer understand instructions necessary to carry out work as a painter.  And Cortes has offered no reason for the Court to believe otherwise.  Accordingly, the ALJ's determination was not based on "erroneous testimony of the VE" as Cortes suggests.

Finally, Cortes argues that the ALJ failed to make specific findings regarding the physical and mental demands of his past relevant work—"essentially skipping the second phase of the step four analysis."  However, his argument is not entirely clear.  He contends that the ALJ "appears to have erroneously relied on the VE's testimony Plaintiff could perform [his] past relevant work."  Additionally, he suggests that the step four assessment was entirely in the VE's head, leaving "nothing for this Court to review."

The Court rejects this argument as well.  Above, the Court determined that the ALJ did not erroneously rely on the VE's testimony.  With regards to the VE's step four assessment, the Court fails to see how it was "entirely in the VE's head."  The VE was asked multiple questions about the physical and mental demands of the job as a painter and whether, in the VE's opinion,

---

[60] *Hill v. Astrue*, 289 F. App'x 289, 294 (10th Cir. 2008).

Cortes could perform the work. Contrary to Cortes's assertions, the ALJ did make specific findings regarding the physical and mental demands of his past relevant work as a painter. In particular, he wrote: "[a]fter comparing the claimant's residual functional capacity with the physical and mental demands of his past relevant work as a painter, I concur with the testimony of the impartial vocational expert and find that, through the date last insured, the claimant was able to perform it as actually and generally performed." The Court therefore rejects Cortes's final argument as well.

Accordingly, the Court concludes that the ALJ's step four determination was not legally or factually flawed.

## IV.    Conclusion

In sum, the Court rejects each of the numerous arguments Cortes has asserted. There was no error in step three when the ALJ determined that Cortes's COPD did not meet Listing 3.02A. The ALJ's RFC determination was supported by substantial evidence. And finally, there was no error in the ALJ's step four determination. Although the Court, and presumably the claimant, would have preferred more specific findings in the ALJ's decision, the Court concludes that the evidence in the record supports the ALJ's decision and the ALJ substantially comported with all procedural requirements. Cortes was therefore afforded a fair hearing and proper reconsideration of his claim for Disability Insurance Benefits.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying Cortes's claim for social security benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 4th day of November, 2016.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE